

RECEIVED

JUN 2 2 2023

TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


JOHN EDWARD SELF )
)
PLAINTIFF, ) No. 23-CV-0148 Scc P
)
)
) Plaintiff's Amended Complaint
V. )
)
)
)
UNITED STATES OF AMERICA, )
---------------------------------)


Comes now, JOHN EDWARD SELF, Plaintiff in the above styled complaint, which he brings pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2680.


In accordance with this court's order on May 10, 2023, Plaintiff hereby provides this, his amended complaint. Furthermore, Plaintiff has cured the issue by adding the United States of America as defendant.


Plaintiff has never filed any lawsuit or appeal in any federal district court or appeals court which has been dismissed.


Plaintiff is currently housed at Oakdale Federal Correctional Institution II, PO Box 5010, Oakdale, Louisiana 71463 (Oakdale FCC II). Oakdale FCC II has two (2) grievance processes. Plaintiff exhausted his administrative remedies by filing Standard Form 95, filed under Administrative Tort Claim Number: TRT-SCR-2022-0064.

Plaintiff: JOHN EDWARD SELF, Reg No. 55298-280, PO Box 5010, Oakdale, Louisiana 71463. Plaintiff request that any and all documents, notices, or other, which are sent to him via postal service, be sent via certified mail, return receipt, due to the fact that there is an ongoing effort by the mailroom at Oakdale FCC II of interfering with inmate mail, especially mail addressed from the courts.

Defendant: UNITED STATES OF AMERICA

On October 6, 2021, Plaintiff was being transported to an eye doctor appoint by officers who are employed at Oakdale FCC II. Plaintiff was confined to a wheelchair at the time of the incident. Officers Courville and Noel loaded Plaintiff and his wheelchair into a prison van, which had an electronic lift. Plaintiff was "black boxed" with wrist shackles and ankle shackles. Plaintiff's wrist shackles were connected to a chain, which was wrapped around his mid-section.  A black-box is essentially a box which is placed between a prisoner's handcuffs to prevent the inmate from unlocking his cuffs. Neither Officer Courville nor Officer Noel made any attempt to apply a seatbelt or restraining device of any kind in order to prevent Plaintiff from being seriously injured in the event of an incident.

Both Officers were rushing because they kept saying "we have to go because we're running late." Once on the road, Officer Courville, the Officer who was driving, began driving at a high rate of speed because they were running late for Plaintiff's appointment. At one point during the trip to the appointment, Officer Courville was forced to slam on the brakes. When Officer Courville slammed on the brakes, Plaintiff was thrown from his wheelchair. Plaintiff was unable to stop himself from being thrown from his wheelchair because of his restraints. Plaintiff's face slammed into the back of the seat, which caused Plaintiff to suffer injuries to his right leg, nerve damage in both wrists and hands, his shoulders and lower back.

In order to paint a more detailed picture, Plaintiff offers the following facts. Plaintiff landed underneath the seat in front of him. The van is setup so that it is wheelchair accessible, meaning that it has a hydrolic lift in order to load a person confined to a wheelchair. Because this was a wheelchair accessible van, there was approximately two and half feet between the seat where Plaintiff was sitting and the seat in front of him. At the time of the incident, Plaintiff was a (380lb) three-hundred-eighty pound man. Plaintiff was confined, not only to his wheelchair, but also had his wrists and ankles shackled. Plaintiff's wrists were further secured from movement and mobility because his handcuffs were attached to a chain, which the officers had wrapped around his waist before ultimately attaching his handcuffs to the chain. The combination of these things alone would prompt a prudent man to take steps to

secure the person in the van with safety restraints of some kind, i.e., a seatbelt or other form of safety device for securing a person in the wheelchair in case the driver been forced to slam on his brakes or be involved in an accident. In a normal case, where the person was able to secure their own body with some form of safety restraint, it could reasonably be stated that the person was, at least to some extent, voluntarily exercising bad judgment. However, in the instant cause, Plaintiff had no option to voluntarily secure himself, nor did he possess the freedom of motion to do so. Therefore, Plaintiff contends that, failure of the officers to take any steps to secure Plaintiff and his wheelchair in the van was negligent since a prudent man would assume a duty to protect Plaintiff who was fully within the officer's care and custody.  Furthermore, the officers never took Plaintiff to a hospital or other medical facility to insure that he was not seriously injured. In fact, Plaintiff did not receive any care regarding his injuries from the fall until he was returned to Oakdale FCC II. Plaintiff was returned to Oakdale FCC II approximately two and half hours after the incident had occured. Oakdale FCC II's care consisted merely of taking x-rays and sending Plaintiff back to his assigned housing unit. The medical officer took x-rays of Plaintiff's hands, wrists, and knees.

Plaintiff also points to the fact that, no one photographed Plaintiff's injuries until seven hours after he had originally been injured. Even after seven hours, Plaintiff's wrists still bore the indentations caused by the handcuffs, which are used to fit around a person's wrists. Although the photographs may not show the extent

of Plaintiff's injuries since those injuries are mostly internal and not external, however, Plaintiff is now sufferring from severe nerve damage in both hands, extreme pain in his lower back, right shoulder, and Plaintiff is also sufferring with numbness in his legs after being injured in the van on October 6, 2021.

Plaintiff has sought medical care for his ongoing medical issues from medical staff at Oakdale FCC II, however, his Inmate Request to Staff have netted the same response every time, wherein, Medical staff state that they "cannot do anything for you."

On the day of the incident in question, there was a third officer present, although he was not located in the van with Plaintiff and the other officers. This third officer was J.D. West. Mr. West was located in a car, which he was driving, This is a car which is used to follow the officers in the van should anything go wrong with a transport or the transportee. Officer West informed Plaintiff on or about two weeks after the incident, that he would be preparing a witness statement which could be used by Plaintiff. Plaintiff has since attempted to procure a copy of that statement but has been unable to do so. After a conversation Plaintiff had with the local Special Investigative Agent (SIA), Plaintiff believes Officer West's witness statement has either been suppressed or Officer West was threatened by staff. The threat would have been that "Officer West would be in trouble" if he wrote witness statement for Plaintiff.

Plaintiff has reason to believe Officer West was threatened. Plaintiff believes this because he had a conversation with SIA, wherein, Plaintiff asked SIA if he knew how Plaintiff could obtain a copy of the witness statement prepared by Officer West. SIA then stated: "Officer West better not have prepared a witness statement for you or he will be in deep shit." Plaintiff has diligently attempted to secure a copy of Officer West's witness statement but Oakdale FCC II has failed to produce it.

(Please see inmate request to staff form, addressed to Officer J.D. West and marked as Plaintiff's "Exhibit A")


Plaintiff submitted an Administrative Tort Claim, Standard Form 95, regarding this incident. The Administrative Tort Claim was submitted on or about October 15, 2021. Plaintiff then received a response letter from the South Central Regional Office which stated that Plaintiff's Federal Tort Claims Act had been received for processing on October 25, 2021. In the same letter, Regional Counsel, Jason A. Sickler, also stated that Plaintiff could expect a response from his office on or before April 24, 2022. Plaintiff then received a phone call from Regional Counsel, Mr. Sickler. The call was facilitated by Plaintiff's unit manager, K. Maxie. During the conversation, Mr. Sickler stated that the Federal Bureau of Prisons was offerring him $750.00 to settle his claim against them. Plaintiff knew this amount of money would never cover the medical bills he will encounter in the future once he is released. Furthermore, the $750.00 would never cover any medical procedure which will be required to correct Plaintiff's injuries. Therefore, Plaintiff informed Mr. Sickler that he

would not be accepting the FBOP's offer, and instead, Plaintiff would be pursuing his claim further thru the court.

On or about November of 2022, Plaintiff received a second letter from the South Central Regional Office, (attached as Plaintiff's Exhibit A-1), which stated that "Your claims have been considered for administrative settlement under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, and authority granted by 28 C.F.R. § 0.172." In the fourth paragraph, Mr. Sickler states that Plaintiff's claims are denied. These facts are submitted in order to establish proof that Plaintiff did exhaust his administrative remedies prior to submitting the instant complaint with the court.

(Please see Plaintiff's Exhibits, marked "A-1" and "A-2" attached to this complaint.)

Plaintiff hereby declares that the foregoing facts are true and correct, to the best of his knowledge and belief, pursuant to the laws of the United States of America pursuant to 28 U.S.C. § 1746.

6-19-2023
_____
Date Executed

By: John Self
_____
Plaintiff

## Claim for Damages

Wherefore, all premises considered, as well as the foregoing facts presented in Plaintiff's affidavit/complaint, which is laid out in the above pages, Plaintiff seeks compensation in the sum certain amount of one million dollars and zero cents for injuries he sustained in the incident detailed above. Plaintiff also seeks any compensation which the court deems equitable for compensation for injuries received due to the Officer's negligent actions.

6·19·2023

Date Executed

By: John Self

Plaintiff
John Edward Self
Oakdale FCC II
2601 East Whatley Road
Oakdale, Louisiana 71463

Please send all notices addressed to Plaintiff via certified mail, return receipt to insure receipt by Plaintiff.